UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                      )
ADISSEO ESPANA S.A. AND ADISSEO USA INC.)
                                      )
                                      )
                                      )
        Plaintiffs,                   )
                                      )
                                      ) Court No. 21-00562
                                      )
        UNITED STATES,                )
                                      )
        Defendant.                    )
_____)

## **COMPLAINT**

Pursuant to Rules 3(a)(2), 5, 7(a), 8, 10, and 11 of the Rules of the United States Court of International Trade, Plaintiffs Adisseo Espana S.A. and Adisseo USA Inc. (collectively "Adisseo"), by and through its attorneys, Steptoe & Johnson LLP, hereby allege the following for its complaint against Defendant, the United States:

## **JURISDICTION**

1. This action is a challenge to the United States International Trade Commission's ("the Commission") final determination in the antidumping investigation covering subject methionine from Spain and Japan. The final determination was styled and published as *Methionine from Spain and Japan,* 86 Fed Reg. 50743 (Sept. 10, 2021) ("*Final Determination*") and accompanying views of the Commission contained in USITC Publication 5230 (September 2021), entitled *Methionine from Japan and Spain: Investigation Nos. 731-TA-*

Case 1:21-cv-00562-N/A   Document 10   Filed 11/12/21   Page 2 of 12

*1535-1536* ("*Views of the Commission*").

2.    This action arises and is brought under Sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended ("the Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii). This Court possesses exclusive jurisdiction over actions arising under those provisions, pursuant to 28 U.S.C. § 1581(c).

## STANDARD OF REVIEW

3.    The standard of review, as set forth in 19 U.S.C. § 1516a(b)(1)(B), is whether the determinations, findings or conclusions of the Commission were "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

## STANDING OF THE PLAINTIFF

4.    Plaintiffs Adisseo Espana S.A. and Adisseo USA Inc. are a foreign producer and a U.S. importer, respectively, of the subject methionine. Plaintiffs are therefore interested parties within the meaning of Section 771(9)(A) and 516A(f)(3) of the Act, as amended, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3). Adisseo was a party to the investigation now being challenged who participated actively in the investigation. Adisseo submitted questionnaire responses, filed pre- and post-hearing briefs, participated in the Commission's hearing prior to the *Final Determination*, and submitted comments to the Commission. Plaintiffs accordingly have standing to bring this action in accordance with 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THIS ACTION

5.    On September 14, 2021, the United States Department of Commerce

("Commerce") published in the *Federal Register* the antidumping duty order. *Methionine From Japan and Spain: Antidumping Duty Order*, 86 Fed. Reg. 51119 (Sept. 14, 2021). In accordance with Section 516A(a)(2)(A)(i)(II) of the Act and 19 U.S.C. § 1516a(a)(2)(A)(i)(II), Plaintiffs filed a timely summons on October 13, 2021. That filing was within 30 days of the publication of the order. Further, this complaint is being filed within 30 days of the summons. Accordingly, this action has been timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II), 28 U.S.C. § 2636(c), and Court of International Trade Rules 3(a)(2) and 6(a).

## STATEMENT OF FACTS

6. On July 29, 2020, the Commission, pursuant to Section 735(b) of the Act (19 U.S.C. § 1673d(b)), instituted antidumping duty investigations, following the receipt of petitions filed with the Commission and Commerce by Novus International Inc. ("Petitioner"), a domestic producer of methionine. *Methionine From France, Japan, and Spain; Institution of Anti-Dumping Duty Investigation and Scheduling of Preliminary Phase Investigations*, 85 Fed. Reg. 47243 (Aug. 4, 2020).

7. On September 18, 2020, the Commission published its affirmative preliminary determination. *Methionine From France, Japan, and Spain; Determinations*, 85 Fed. Reg. 58385 (Sept. 18, 2020); *Methionine from France, Japan, and Spain*, Inv. Nos. 731-TA-1534-1536 (Preliminary), USITC Pub. 5121 (Sept. 2021). The Commission determined that there was a reasonable indication that an industry in the United States was materially injured by reason of imports of methionine from France, Japan, and Spain, that are alleged to be sold in the United States at less than fair value ("LTFV").

8. On February 24, 2021, the Commission published its Notice of Institution of the final phase of its injury investigation. *Methionine From France, Japan, and Spain; Scheduling*

*of the Final Phase of Antidumping Duty Investigations*, 86 Fed. Reg. 13585 (Mar. 9, 2021).

9. On May 5, 2021, Adisseo filed its pre-hearing brief, in which it argued that: (1) the domestic industry suffered no adverse volume effects by reason of subject imports; (2) the domestic industry suffered no adverse price effects by reason of subject imports; (3) the domestic industry suffered no adverse impact by reason of subject imports; and (4) subject imports did not threaten to cause material injury to the domestic industry.

10. On May 11, 2021 the Commission conducted its public hearing by video conference, in which Adisseo participated.

11. On May 18, 2021, Adisseo filed its post-hearing brief, in which it argued that: (1) the domestic industry's decline in market share did not support a material injury determination; and (2) the declining price for methionine in the U.S. market during the period of investigation was not caused by subject imports.

12. The investigation schedules became staggered when Commerce postponed the final determinations for its antidumping duty investigations regarding methionine from Japan and Spain, but did not postpone the final determination in the investigation of methionine from France. *Methionine From Japan: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances and Postponement of Final Determination and Extension of Provisional Measures*, 86 Fed. Reg. 12627 (Mar. 4, 2021); *Methionine From Spain: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Negative Determination of Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures,* 86 Fed. Reg. 12614 (Mar. 4, 2021); *Methionine From France: Final Determination of Sales at Less Than Fair Value and Final Partial Determination of Critical Circumstances*, 86 Fed. Reg. 26697

(May 17, 2021).

13. On June 9, 2021, Adisseo submitted its final comments to the Commission in the methionine from France investigation, which also referenced imports of methionine from Japan and Spain. In its comments, Adisseo demonstrated that the information provided with the petitioner's post-hearing brief did not support petitioner's theory of underselling. Specifically, Adisseo showed that the customer-specific examples of underselling provided by Petitioner were not probative and that Petitioner's theory of underselling was conceptually unsound.

14. The Commission first reached a final determination in the investigation of methionine from France in June 2021. *Methionine from France*, Inv. No. 731-TA-1534 (Final), USITC Pub. 5206 (June 2021); *Methionine From France*, 86 Fed. Reg. 35826 (July 7, 2021).

15. On August 6, 2021, Adisseo submitted its supplemental final comments to the Commission in the methionine from Japan and Spain investigation. In its comments, Adisseo again demonstrated that the Petitioner's theory of underselling was flawed and that subject imports did not materially injure the domestic industry.

16. Commerce published its final affirmative determinations regarding LTFV imports of methionine from Japan and Spain on July 23, 2021. *Methionine From Japan: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 86 Fed. Reg. 38983 (July 23, 2021); *Methionine From Spain: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances,* 86 Fed. Reg. 38985 (July 23, 2021).

17. On September 10, 2021, the Commission published its final determination regarding subject imports from Japan and Spain. *Methionine from Spain and Japan,* 86 Fed Reg. 50743 (Sept. 10, 2021) and *Methionine from Japan and Spain*, Investigation Nos. 731-TA-

1535-1536 (Final) USITC Pub. 5230 (September 2021) (collectively the "*Final Determination*").  Notwithstanding the facts set out by Adisseo in its pre- and post-hearing briefs and final comments, the Commission found that an industry in the United States was materially injured by reason of imports of methionine from Japan and Spain.  In reaching its determination, the Commission explicitly adopted and incorporated the finding and analysis regarding material injury from the methionine from France determination.

## STATEMENT OF CLAIMS

### COUNT 1

18.     Paragraphs 1 through 17 are incorporated by reference.

19.     The Commission's determination that the domestic industry producing methionine was materially injured by reason of cumulated subject imports from France, Japan and Spain was not supported by substantial evidence and was not in accordance with law.

### COUNT 2

20.     Paragraphs 1 through 19 are incorporated by reference.

21.     Regarding the volume effects of subject imports, the Commission failed to consider among other factors the substantial decline in imports of methionine from non-subject third country sources, in particular from China, in reaching a conclusion that the volume of cumulated subject imports and the increase in the volume of cumulated submit imports was "significant."

22.     The Commission ignored the significant absolute growth in the domestic industry's shipments over the period of investigation, and equally ignored information that the domestic industry would not have been able to increase its U.S. shipments more than it did.

## COUNT 3

23. Paragraphs 1 through 22 are incorporated by reference.

24. Regarding the price effects of subject imports, the Commission dismissed, without explanation, evidence of predominant overselling by subject imports derived from the Commission's traditional quarterly price comparisons in favor of less reliable, anecdotal evidence of price comparisons to reach a conclusion that subject imports had underpriced the domestic like product. Indeed, Chair Kearns and Commissioner Karpel relied on this less probative evidence to conclude that the record supported a finding of "significant underselling," notwithstanding the fact that the quarterly price comparisons showed "predominant overselling."

25. One of the arguments on which the Commission rested its finding of adverse price effects was Petitioner's eleventh hour argument that lower priced *bids* for subject imports caused Petitioner's prices to fall, even though the quarterly pricing comparisons demonstrated that the *actual prices* at which subject imports were sold were predominantly higher than those of the Petitioner. Not only was this argument illogical, this argument was not supported by any meaningful evidence of lost revenues, which is where the consequences of this competition would have been manifest and was inconsistent with substantial evidence that purchasers are relatively price insensitive. The Commission's acceptance of Petitioner's effort to shift the price comparison analysis from a price basis to a bid basis so late in the proceeding was also inconsistent with Commission precedent.

## COUNT 4

26. Paragraphs 1 through 25 are incorporated by reference.

27. Regarding the volume of sales allegedly lost to subject imports, the Commission

included reported lost sales volume of one U.S. purchaser, notwithstanding the fact that the totality of the record, including that purchaser's questionnaire response, demonstrated that that this purchaser did not buy subject imports in lieu of the domestic like product for reasons of price.

28. In placing undue weight on these lost sales volumes, the Commission also ignored substantial testimony that purchasers of methionine are relatively price insensitive.

## COUNT 5

29. Paragraphs 1 through 28 are incorporated by reference.

30. Regarding price trends, Plaintiffs demonstrated that U.S. prices for methionine were closely tied to world prices, and that to the extent that U.S. prices for methionine fell during the period of investigation, that decline reflected a worldwide decline in the price of methionine driven by worldwide overcapacity. In rejecting this argument, the Commission erroneously, and contrary to record evidence, stated that the only manner by which U.S. prices could be affected by world prices is through subject import competition.

31. While Petitioner relied heavily on the argument that price declines were caused by its purchasers exercising "meet or release" contract clauses, Petitioner failed to submit any evidence that these clauses were actually exercised, a fact that the Commission itself recognized.

32. While the Commission accurately noted that two purchasers reported that domestic producers had to reduce prices to compete with lower priced imports (*Views of the Commission* at 37 n.154 (Proprietary Version)), the Commission failed to note that a far larger number reported that domestic producers *did not* have to lower their prices, or that they had no knowledge of such decreases.

- 9 -

## COUNT 6

33.     Paragraphs 1 through 32 are incorporated by reference.

34.     Regarding the impact of subject imports on the domestic industry, the Commission (i) failed to give adequate weight to the declining per-unit value of the domestic industry's exports on its economic performance, an effect that cannot be attributed to subject import competition, (ii) failed to consider the significance of the disparate performance of the domestic industry as part of its impact determination, (iii) gave credence to a proprietary indicator of injury that was contradicted by public statements by Petitioner (see *Views of the Commission* at 44 n.182 (Proprietary Version)) and (iv) failed to consider the impact of the domestic industry's significant inventory drawdown on capacity utilization.

## COUNT 7

35.     Paragraphs 1 through 34 are incorporated by reference.

36.     Regarding the impact of subject imports on the domestic industry, the Commission failed to give adequate weight to questionnaire response evidence and witness testimony that U.S. purchasers require a diversity of methionine supply, encompassing both domestic and import sources, and that they are willing to pay a higher price in order to achieve that diversification. The reasonableness of this sourcing strategy was supported by record evidence showing that the domestic industry was either at capacity or was unable to fulfill customer demands during the period of investigation.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

37.     WHEREFORE, Adisseo respectfully requests that this Honorable Court: 1) hold

that the Commission's *Final Determination* is not supported by substantial evidence and is otherwise not in accordance with law to the extent alleged herein; 2) remand the Final Determination to the Commission with instructions to enter a final negative determination as to Spain; and 3) provide such other relief as this Court deems proper.

                              Respectfully submitted,

                              /s/ Eric C. Emerson
                              Eric C. Emerson
                              Christopher Forsgren
                              Steptoe & Johnson LLP
                              1330 Connecticut Avenue, N.W.
                              Washington, D.C. 20036
                              (202) 429-8076

<u>Certificate of Service</u>

*Adisseo Espana S.A. and Adisseo USA Inc. v. United States*
**Court No. 21-00562**

    I, Eric C. Emerson hereby certify that on November 12, 2021, I caused copies of Plaintiffs' Complaint to be served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice26
Federal Plaza
New York, NY 10278

Attorney-In-Charge Commercial
Litigation Branch
U.S. Department of Justice
1100 L Street, NW Washington, DC 20530

The Honorable Lisa R. Barton
Secretary to the Commission
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436

/s/ Eric C. Emerson
Eric Emerson
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
*Counsel to Adisseo Espana S.A. and Adisseo USA Inc.*

## Notice to Interested Parties

*Adisseo Espana S.A. and Adisseo USA Inc. v. United States*
**Court No. 21-00562**

I, Eric C. Emerson, hereby certify that on November 12, 2021, pursuant to USCIT Rule 3(f), notified all interested parties who were party to the contested administrative proceeding and are listed below by mailing copies of Plaintiffs' Complaint by certified mail, return receipt requested:

**On behalf of Novus International, Inc.:**
Christopher T. Cloutier, Esq.
Schagrin Associates
900 Seventh Street, NW
Suite 500
Washington, DC 20001

**On behalf of Evonik Corporation:**
Matthew T. McGrath, Esq.
Barnes Richardson & Colburn LLP
1850 M Street, NW
Suite 1060
Washington, D.C. 20036

**On behalf of Sumitomo Chemical Company, Ltd.:**
Christine M. Streatfeild, Esq.
Baker & McKenzie LLP
815 Connecticut Ave., N.W.
Washington, DC 20006

**On behalf of the Government of Spain:**
Angeles Bosch
Embassy of Spain
2375 Pennsylvania Avenue, NW
Washington, DC 20037

   /s/ Eric C. Emerson
Eric Emerson
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
*Counsel to Adisseo Espana S.A. and Adisseo USA Inc.*