# UNITED STATED COURT OF INTERNATIONAL TRADE
### BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| ADISSEO ESPANA S.A. AND ADISSEO USA INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> NOVUS INTERNATIONAL, INC., <br><br> *Defendant-Intervenor.* | Court No. 21-00562 |

## <u>ORDER</u>

Upon consideration of the motions for judgment on the administrative record filed by plaintiffs, the responses thereto filed by the defendant and the defendant-intervenor, and all other papers and proceedings herein, it is hereby:

**ORDERED** that the motion is **DENIED**; and it is further

**ORDERED** that the U.S. International Trade Commission's final determination is sustained; and it is further

**ORDERED** that plaintiffs' complaint is **DISMISSED**.

It is **SO ORDERED**.

_____
Honorable M. Miller Baker, Judge
U.S. Court of InternationalTrade


Dated: _____, 2022
        New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| ADISSEO ESPANA S.A. AND ADISSEO USA INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> NOVUS INTERNATIONAL INC., <br><br> *Defendant-Intervenor.* | Court No. 21-00562 <br><br> PUBLIC VERSION <br><br> Business Proprietary Information Removed from Brackets on Pages 8-12 and 22-23 |

## DEFENDANT-INTERVENOR'S RESPONSE BRIEF IN OPPOSITION TO THE MOTION FOR JUDGMENT ON THE AGENCY RECORD

Christopher T. Cloutier, Esq.
Benjamin J. Bay, Esq.
SCHAGRIN ASSOCIATES
900 Seventh Street, NW, Suite 500
Washington, DC 20001
(202) 719-7000

*Counsel for Novus International Inc.*

Dated: July 14, 2022

# TABLE OF CONTENTS

**STATEMENT PURSUANT TO RULE 56.2(c)(1)** ...............................2

I.    Administrative Determination Under Review .............................2

II.   Issues Presented for Review...........................................................2

**STATEMENT OF FACTS** ......................................................4

**STANDARD OF REVIEW** .....................................................4

**ARGUMENT**.........................................................................7

I.    The Commission's Determination that Subject Imports Adversely Affected the Price of the Domestic Like Product Was in Accordance with Law and Based on Substantial Evidence ....................................................7

  A.   The Commission's Finding that Price is an Important Factor in Purchasing Decisions is Both Reasonable and Supported by Substantial Evidence .....................................................................7

  B.   Substantial Evidence Supports the Commission's Finding of Price Depression.....................................................................10

  C.   "Global Overcapacity" does not Provide Foreign Producers a Free Pass to Sell Products at Dumped Prices .....................................15

II.   The Commission's Findings Regarding Volume were in Accordance with Law and Based on Substantial Evidence....................17

III.  The Commission's Determination that Subject Imports had a Substantial Impact on the Domestic Industry Should be Affirmed.......21

IV.   Conclusion ....................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281 (1974)................................................................................6

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984)................................................................................6

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) .........................5

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984)..........................................................................*passim*

*Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056 (Fed. Cir. 2001)................................................................................5

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29 (1983)..........6

*Nucor Corp. v. United States*, 414 F.3d 1331 (Fed. Cir. 2005) ..............14

*Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372 (Fed. Cir. 2001) ..............................................................................7

*Rhone Poulenc S.A. v. United States*, 8 CIT 47, 55, 592 F. Supp. 1318 (1984)..............................................................................14

*Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978 (Fed. Cir. 1994) ..............................................................5

*United States Steel Group v. United States*, 96 F.3d 1352 (Fed. Cir. 1996).............................................................................6, 15

## STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i) .....................................................4

19 U.S.C. § 1677(7)(C)(i)....................................................17, 18, 19, 20

19 U.S.C. § 1677(7)(C)(ii) .......................................................14

# GLOSSARY

**Adisseo**
Adisseo Espana S.A., Adisseo France SAS, and Adisseo USA Inc.

**AUVs**
Average Unit Values

**Commission**
United States International Trade Commission

**Novus**
Novus International Inc.

**POI**
Period of Investigation

**Sumitomo**
Sumitomo Chemical Company, Ltd. and Sumitomo Chemical America, Inc.

**Views**
*Methionine from France*, Inv. No. 731-TA-1534 (Final), USITC Pub. 5206 (June 2021)

## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

ADISSEO ESPANA S.A. AND
ADISSEO USA INC.,

      *Plaintiffs,*

    v.

UNITED STATES,

      *Defendant,*

    and

NOVUS INTERNATIONAL INC.,

      *Defendant-Intervenor.*

Court No. 21-00562

PUBLIC VERSION

Business Proprietary
Information Removed from
Brackets on Pages 8-12 and
22-23

## DEFENDANT-INTERVENOR'S RESPONSE BRIEF IN OPPOSITION TO THE MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to USCIT Rule 56.2 and the Court's scheduling order,

Defendant-Intervenor Novus International Inc. ("Novus" or the

"Petitioner") submits the following response in opposition to the motion

for judgment on the agency record filed by Plaintiffs Adisseo Espana

S.A. and Adisseo USA Inc. ("Adisseo") in the above-captioned action.

## STATEMENT PURSUANT TO RULE 56.2(c)(1)

### I.   Administrative Determination Under Review

The administrative determination under review is the final determination of the U.S. International Trade Commission (the "Commission") in the investigation of *Methionine from Spain and Japan*, 86 Fed. Reg. 50,743 (Sep. 10, 2021) ("Spain and Japan Final Determination") and accompanying views of the Commission contained in USTIC Publication 5230 (Sep. 2021), entitled Methionine from Japan and Spain: Investigation Nos. 731-TA-1535-1536, including the confidential version of those views. Appx02457, Appx11362, and Appx02074-02124. These views incorporated the reasoning of the Commission in *Methionine from France*, Inv. No. 731-TA-1534, contained in USTIC Publication 5206 (June 2021), entitled Methionine from France: Investigation No. 731-TA-1534 ("Views"), including the confidential version. Appx02125 and Appx02447-02456.

### II.   Issues Presented for Review

1. Whether the Commission's determination that subject imports caused adverse price effects for the domestic like product was supported by substantial evidence and otherwise in accordance with law.

<u>Defendant-Intervenor Novus' Position</u>: Yes, the Commission's determination that cumulated subject imports of methionine caused adverse price effects is supported by substantial evidence and in accordance with law. Specifically, the Commission's findings that price is an important factor in purchasing decisions and that subject imports caused price depression are both reasonable and supported by substantial evidence. Plaintiffs' arguments to the contrary are merely attempts to have the Court reweigh the record evidence to override the lawful determination of the Commission. Moreover, Plaintiffs' arguments, if validated, would create holes in the trade laws to allow injurious dumping in certain factual scenarios without the possibility of remediation.

2. Whether the Commission's determination that the volume of subject imports was significant was supported by substantial evidence and otherwise in accordance with law.

<u>Defendant-Intervenor Novus' Position</u>: Yes, the Commission's findings regarding volume were in accordance with law and based on substantial evidence, and all arguments by Plaintiffs are merely an attempt to entice the Court to reweigh the evidence and override the Commission's reasoned and supported finding.

3. Whether the Commission's determination that subject imports adversely impacted the condition of the domestic industry was supported by substantial evidence and otherwise in accordance with law.

<u>Defendant-Intervenor Novus' Position</u>: Yes, the Commission's determination that subject imports had a substantial impact on the domestic industry should be affirmed. As set out above, the Commission's findings with regard to volume and price effects are both supported by substantial evidence and otherwise in accordance with law, and, therefore, both support the Commission's impact determination. Moreover, any argument by Plaintiffs that may imply that the Commission's impact finding is flawed on any other basis is also without merit and should be rejected.

## **STATEMENT OF FACTS**

Defendant-Intervenor Novus agrees with the statement of the facts as presented in Defendant's response brief (ECF 33 at 8-17).

## **STANDARD OF REVIEW**

The standard of review requires that the Court uphold an agency determination as lawful unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence means "more than a

mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

A plaintiff must do more than simply point to contradictory evidence in the record to overturn an agency's decision. "{T}he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (citations omitted). To the extent, therefore, that a plaintiff claims the evidence before the Commission "could be open to multiple interpretations, its argument does not require, or even allow, reversal." *Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056, 1062 (Fed. Cir. 2001) (citing *Matsushita*, 750 F.2d at 933). In addition, a plaintiff may not ask the Court to re-weigh the evidence and decide the case for the Commission. *See Matsushita*, 750 F.2d at 933. The role of the Court is not to question the agency's decisions about the weight or quality of the evidence. *See United States Steel Group v. United States*, 96 F.3d 1352, 1356-57 (Fed.

Public Version

Cir. 1996) (it is the agency's task to evaluate and assign weight to the evidence); *see also Matsushita*, 750 F.2d at 933 (it is not the weight of the evidence, but whether it reasonably supports a rational decision, that is evaluated by a reviewing court). The Court may not substitute its judgment or its interpretation of the evidence for that of the agency. *See Matsushita*, 750 F.2d at 936.

The standard also requires the Commission to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983). While the Commission must explain the basis for its decisions, the Court "will . . . 'uphold a decision of less-than-ideal clarity if the agency's path may reasonably be discerned.'" *Id.* (quoting *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

In reviewing the Commission's interpretation of a statutory provision, this Court is guided by the principles set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Under *Chevron*, a court reviewing an agency's interpretation of a statute must begin with the statutory test: "{i}f the intent of Congress is

6

clear, that is the end of the matter; for the court, as well as the agency,

must give effect to the unambiguously expressed intent of Congress."

467 U.S. at 842-43 (citations omitted). If this Court finds that the

statute is silent or ambiguous with respect to the specific question at

issue, the question for the Court is whether the Commission's

interpretation is based on a permissible interpretation of the statute.

*Chevron*, 467 U.S. at 842. The agency's reasonable interpretations of its

statutory responsibilities are entitled to judicial deference. *Id.* at 844;

*Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1379-

80 (Fed. Cir. 2001).

## ARGUMENT

### I.  The Commission's Determination that Subject Imports Adversely Affected the Price of the Domestic Like Product Was in Accordance with Law and Based on Substantial Evidence

#### A.  The Commission's Finding that Price is an Important Factor in Purchasing Decisions is Both Reasonable and Supported by Substantial Evidence

Plaintiffs ask this Court to revise the Commission's finding that

"price is an important factor" in purchasing decisions to burden the

Commission with a non-existent requirement to determine that

purchasing decisions were driven "principally if not exclusively by

Public Version

price." ECF 30 at 11. Plaintiffs have proposed this heightened test in order to provide a basis for this Court to ignore the Commission's analysis on price effects and to reweigh the record evidence in Plaintiffs' favor. The record, however, clearly sets out the Commission's actual finding – price is one of numerous factors considered important – and that finding is supported by substantial evidence, as set out in Defendant's response brief. ECF 33 at 24-27. Thus, the Commission's finding that "price is an important factor" is well rooted, and it should not be reinterpreted as Plaintiffs suggest.

When making this argument, Plaintiffs assert that the prepared statements by two witnesses at the hearing indicating that price was not the most important purchasing factor should be dispositive. ECF 30 at 13, *citing Methionine from France, Japan and Spain*, Inv. Nos. 731-TA-1334-1536 (Final), Hearing Transcript (May 11, 2021) at Appx11106-11108 (Batal) and Appx11115-11117 (Cross). The testimony of only two purchasers of the subject merchandise merely stating that other factors may be more important than price does not invalidate the Commission's general finding that price "is an important factor" based on substantial record evidence – [

]. Appx06499-Appx06501 and Appx06532-Appx06533.

In addition, Plaintiffs claim that "Adisseo repeatedly brought to the Commission's attention the fact that price was a less important factor in purchasing decisions than other non-price factors" – but also claim that the argument was ignored by the Commission, and, therefore, by the Commission's silence, its determination is invalid. ECF 30 at 13, fn. 3. What is ignored by Plaintiffs, however, is not only the detailed consideration of all of the record evidence by the Commission, but also that the Commission specifically weighed the evidence placed on the record by Adisseo regarding this allegation and compared that evidence to the evidence regarding price-based purchasing behavior put on the

record by Novus, ultimately finding that Adisseo's additions to the

record:

> … do not concern the same accounts identified by Novus nor
> do they negate the examples of pricing pressure that Novus
> provided. Additionally, [
>
>
>
>
> ].
> *This response does not support that price or total costs are
> unimportant in purchasing decisions, as claimed by Adisseo.*
> Appx02109 (fn. 153) (emphasis added).

In other words, despite Plaintiffs' protestations to the contrary, the

Commission did, in fact, review and analyze Adisseo's allegations.

Plaintiffs simply disagree with the Commission's conclusion, and

therefore are asking for this Court to reweigh the evidence in its favor.

The court should decline to do so. *See Matsushita*, 750 F.2d at 933.

## B. Substantial Evidence Supports the Commission's Finding of Price Depression

As an initial matter, Plaintiffs' assertion that the Defendant-

Intervenor's theory of price depression was "developed for the first time

during the hearing" is not accurate. *See* ECF 30 at 14. In the Staff

Conference held at the onset of the investigation on August 19, 2020,

Mr. Galo from Novus testified that:

10

Public Version

We also have earned over the years the privilege of a last call with some of our legacy clients, where before they switched to a different supplier, we had one last opportunity to meet the competing price. Before the current crisis by low-priced imports from France, Japan, and Spain, we would from time to time see through last calls that we were about one to two cents higher per pound than a competing offer. In the last year or two, however, we are seeing that we can be as high by 10 cents or more a pound, and this is on a commodity product traditionally priced at something like 1 $1 per pound. It's like nothing I've ever seen. And because we have great relationships and presence in the industry with all key buyers, we are able to obtain very good information regarding who we are competing against, and we know that it is Adisseo and Sumitomo that are driving down prices. Appx09401-09402.

Thus, from the start of this case, Defendant-Intervenor Novus placed evidence on the record of price depression by subject imports, including the pricing mechanisms through which that price pressure was being asserted. Furthermore, Novus placed contemporaneous internal communications on the record to support and substantiate how low subject import prices effected the U.S. price for methionine. Appx02108-02109. Specifically, Exhibit 2 to Petitioner's posthearing brief contained [

].[1]

Appx07849-07972.

Based on this and other record evidence, the Commission found that the overselling trends apparent in the pricing product data occurred because domestic producers reduced their prices to meet lower-priced offers for the subject merchandise. Appx02109.

In spite of the substantial record evidence supporting the Commission's conclusion that subject imports caused price depression, Plaintiffs argue that the Commission's findings on price effects were defective based on instances of overselling. ECF 30 at 26-27 and 39-49. As set out in Defendant's response brief, the Commission's analysis with regards to price effects – including its consideration of underselling and price depression and suppression – were in accordance with the statute and supported by record evidence. ECF 33 at 23-24 and 33-46.

_____

[1] [                    ] Evonik, the other domestic producer of methionine. *See* Evonik's Post-Conference Comments (Aug. 24, 2020) at 5 [


]. Appx03954.

Moreover, to impose the artificial restrictions on the Commission's analysis proposed by the Plaintiffs would eviscerate the trade remedy laws to permit injurious dumping in a specific factual scenario without the possibility of a remedy.

When faced with low-priced imports, U.S. producers – whether they be producers of methionine or any other product – have two choices. These producers can either hold firm on their pricing (but risk being undersold and losing sales volume), or reduce prices (in an attempt to maintain that sales volume). Plaintiffs' extra-statutory argument that the Commission must find pricing data indicating overselling as dispositive would create a situation where domestic producers could only obtain trade remedy relief from low-priced imports if they constantly chose the first option, and lost sales to subject imports. This would deny domestic producers the relief to which they are entitled in these situations, particularly in capital-intensive industries (such as methionine) where high capacity utilization levels are critical to covering fixed costs in order to maintain basic business viability. Appx02109. In such a case, the domestic industry would be faced with a different choice – maintain prices and lose the sale (sacrificing capacity

utilization to keep your chances for trade relief open), or match the

price to maintain sales volume and capacity utilization, but forfeit the

possibility of trade relief, thereby encouraging further price reductions

from foreign competition. Such a result is counter to the intent of

Congress which, instead of limiting the Commission's analysis on price

effects to only encompass a finding of significant underselling,

specifically instructed the Commission to consider both underselling

and other price effects in its evaluation, while not requiring a definitive

finding of underselling in order to find price depression or suppression.

19 U.S.C. § 1677(7)(C)(ii). Such an interpretation of the statute is in

line with prior decisions of both this Court and the Court of Appeals for

the Federal Circuit. *See* ECF 33 at 23-24 citing *Nucor Corp. v. United*

*States*, 414 F.3d 1331, 1339 (Fed. Cir. 2005 ("{t}he Commission complied

with the statutory requirement that it consider whether there had been

underselling.") and *Rhone Poulenc S.A. v. United States*, 8 CIT 47, 55,

592 F. Supp. 1318, 1326 (1984) (finding no requirement for the

Commission to make a categorical statement on underselling).

In an attempt to support its position, Plaintiffs have misstated the

Commission's findings and implied that record evidence, certified to and

provided by petitioner, is somehow not probative. As set out above and in the Defendant's response brief, this position has no basis. ECF 33 at 39-45. These are merely attempts by the Plaintiffs to entice this Court to reweigh the evidence in Plaintiffs' favor. Under the applicable standard of review, this Court should decline to do so, as the record facts support the Commission's findings, all in accordance with the statute. *See Matsushita*, 750 F.2d at 933. *See also United States Steel Group v. United States*, 96 F.3d 1352, 1356-57 (Fed. Cir. 1996).

### C.   "Global Overcapacity" does not Provide Foreign Producers a Free Pass to Sell Products at Dumped Prices

Plaintiffs argue that any decline in U.S. methionine prices was by reason of "global price depression caused by global overcapacity," and that this alternative cause of price depression "was unreasonably ignored by the Commission." ECF 30 at 27. As set out in the Defendant's response brief, the Commission in no way ignored this argument, but instead, after weighing the evidence, clearly set out in its final determination how this alternative theory did not explain declining domestic prices during the POI. ECF 33 at 46-50. Moreover, in its analysis, the Commission set out that "any price pressure created by

15

Public Version

global overcapacity would have been transmitted to the U.S. market by imports, consisting primarily of subject imports, and that the reason for low subject import prices did not detract from their adverse effects." ECF 33 at 46 (citing Appx02110).

These are important findings, as, in essence, the Plaintiffs' position is that lower prices in other markets, when caused by global overcapacity, would authorize subject producers to sell at injurious and unfair prices in the United States. This position is preposterous. To allow this position to prevail would provide a "get out of jail free" card for foreign producers and importers to dump with impunity whenever global prices are below U.S. prices. Moreover, such a scenario would encourage further overcapacity by foreign producers who would now be rewarded for their own capacity expansions with the ability to undercut U.S. producer prices without fear of trade remedy repercussions. Such a result would be contrary to both the text and the purpose of the trade laws, and, accordingly, this Court should reject Plaintiffs' contention.

## II.    The Commission's Findings Regarding Volume were in Accordance with Law and Based on Substantial Evidence

Plaintiffs argue that the Commission's findings that the increase in the volume of cumulated subject imports was significant both in absolute terms and relative to apparent U.S. consumption were not in accordance with law and not supported by substantial evidence. ECF 30 at 3-4, 49-62. Although Plaintiffs acknowledge that "subject import volume did increase both absolutely and relatively over the POI," the Plaintiffs assert, without reference to a statutory requirement or controlling case law, that the Commission cannot find this volume increase to be "significant" under 19 U.S.C. § 1677(7)(C)(i) due to additional factors (supplier diversity or volume effects) that supposedly mitigated the impact of that volume increase. *Id.* Essentially, Plaintiffs seek to revise the Commission's volume analysis under 19 U.S.C. § 1677(7)(C)(i) as an inquiry into "adverse volume effects." *Id.* This position has no basis in the statute, and it should be rejected by this Court.

As set out in Defendant's response brief, the statute bifurcates the Commission's injury inquiry into two, distinct analyses: one regarding

the volume of subject imports that makes no mention of effects, and the price and impact sections that deal specifically with the effects of those imports. ECF 33 at 20. As such, there is no statutory obligation placed on the Commission to consider whether supplier diversity or other factors lessened the impact of a significant volume of imports, or to review any adverse volume effects when determining whether subject import volumes, or the increase in those volumes, are significant, despite Plaintiffs' contention. In these investigations, the Commission evaluated the increase in the volume of subject imports as required under 19 U.S.C. § 1677(7)(C)(i), and that analysis, as set out in Defendant's response brief, is supported by substantial evidence. *Id.* at 21-22 (citing Appx02102-02103; Appx01691–01692; Appx01708; Appx01796–01797).

Furthermore, assuming, *arguendo*, that Plaintiffs' arguments had any basis in the statute, Plaintiffs' challenge to the Commission's material injury finding based on the supposed insufficiency of the Commission's analysis under 19 U.S.C. § 1677(7)(C)(i) would also fail. When evaluating the volume of subject imports, the statute instructs the Commission to "consider whether the volume of imports of the

18

Public Version

merchandise, *or* any increase in that volume, either in absolute terms or relative to production or consumption in the United States, is significant." 19 U.S.C. § 1677(7)(C)(i) (emphasis added). In other words, in order for this statutory requirement to be met, the Commission need only find that one of following two scenarios exist: that the overall level of subject import volume is significant, or that the increase in subject import volume is significant. Thus, while the Commission can, and often does in affirmative determinations, find that both the volume of subject imports and the increase in that volume are significant, it is not statutorily required to do so.

In these investigations, the Commission determined that "the volume of cumulated subject imports and the increase in the volume of cumulated subject imports is significant in both absolute terms and relative to apparent U.S. consumption." Appx02103. Plaintiffs' brief only challenges the Commission's findings by claiming that the "increase {in subject import volume} was not significant." ECF 30 at 49. Nowhere in Plaintiffs' brief is there a substantive challenge to the Commission's finding that the volume of cumulated subject imports is significant on both an absolute basis and relative to apparent

consumption.[2] *Id.* at 49-62. In conceding this point, Plaintiffs also concede that the Commission's finding with regards to subject import volume are in accordance with the statute and supported by substantial evidence. On this basis alone, this Court can, and should, reject Plaintiffs' challenge to the Commission's 19 U.S.C. § 1677(7)(C)(i) finding.

Plaintiff's arguments here are, like those relating to price effects discussed above, merely an attempt to persuade the Court to reweigh record evidence regarding the impact of subject imports in these investigations in their favor to undermine the Commission's material injury determination, which was made in accordance with the statute and supported by substantial evidence. The Court should decline to do

––––––––––––––––––––

[2] Only once does the Plaintiffs' brief mention the Commission's finding regarding overall subject import volume, which it does in a misguided attempt to attribute any potential error with regard to the increase in subject imports to that finding – "{t}he Commission's failure to put the increase in subject import volume in the appropriate context thus undermines its conclusion that the volume of subject imports, and the increase in subject imports, was 'significant.'" ECF 30 at 58. This attribution attempt, however, challenges neither the legal nor factual basis for the Commission's finding regarding the overall volume of imports.

Public Version

so. As shown in Defendant's response brief, the Commission reasonably considered supplier diversity and substitutability when analyzing the impact of subject imports. ECF 33 at 53-60. These analyses were part of a well-reasoned determination that subject imports had materially injured the domestic industry. Appx02075. As the Plaintiffs' claims have no merit, this Court should affirm the Commission's determination.

## III.   The Commission's Determination that Subject Imports had a Substantial Impact on the Domestic Industry Should be Affirmed

Plaintiffs argue that because they view the Commission's findings regarding volume and price effects as flawed, "the Commission's determination of adverse financial impact on the domestic industry – which relies solely on those findings – also cannot be sustained." ECF 30 at 62-64. As set out above, these arguments do not withstand scrutiny. The arguments are based on misrepresentations of the facts of this case, the applicable law, and the Commission's analyses and reasoning, and they are a thinly-veiled and improper attempt to ask this court to re-weigh the record evidence in their favor. As such, this

Public Version

Court should decline to reject the Commission's impact determination on that basis.

Further, while Plaintiffs' brief specifically links any purported failing in the Commission's impact determination solely to the Commission's volume and price effect findings, any argument that may be construed to directly challenge the Commission's finding that subject imports adversely affected the domestic industry, such as the Plaintiffs' position that subject imports should have been analyzed on a disaggregated basis,[3] or that declining export shipment AUVs should preclude the

_____

[3] Plaintiffs contend that because the two forms of methionine are not fully interchangeable, "difference in chemical configuration should have had an impact on the manner in which the Commission assessed the increase in subject import volume during the POI." ECF 30 at 55. This, however, fails to take into account Adisseo's [

]. Appx02109 (fn. 153) citing Adisseo Posthearing Brief, Responses to Commissioner Questions Annex IV at 2–3 (Appx 07694 and Appx07756-07763). It is hard to see how Plaintiffs can fault the Commission's analysis and findings on this point, when Adisseo was well aware that [

Commission from linking subject imports to the declining performance of the domestic industry, also fail, as set out in the Defendant's response brief. ECF 33 at 50-61. Accordingly, this Court should affirm the Commission's finding that subject imports had a significant impact on the domestic industry.

## IV.   Conclusion

For the foregoing reasons, Defendant-Intervenor respectfully requests that the Court uphold the ITC's final determination as supported by substantial evidence and in accordance with law.

Respectfully submitted,

*/s/ Christopher T. Cloutier*
Christopher T. Cloutier, Esq.
Benjamin J. Bay, Esq.

SCHAGRIN ASSOCIATES
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel for Novus International, Inc.*

Dated: July 14, 2022

].

23

Public Version

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that the foregoing response brief contains 5,011 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in the Court's Chamber's Procedures.


Dated: July 14, 2022                            <u>/s/ Christopher T. Cloutier</u>
                                                Christopher T. Cloutier