*NON-CONFIDENTIAL VERSION*

**UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER**

Court No. 21-00562

**ADISSEO ESPANA S.A. AND
ADISSEO USA INC.,**

*Plaintiffs,*

v.

**UNITED STATES,**

*Defendant,*

and

**NOVUS INTERNATIONAL INC.,**

*Defendant-Intervenor.*

**DEFENDANT UNITED STATES INTERNATIONAL TRADE
COMMISSION'S RESPONSE TO PLAINTIFFS' DRAFT REMAND
ORDER AND ACCOMPANYING STATEMENT**

| | |
|---|---|
| NOAH A. MEYER | DOMINIC L. BIANCHI |
| Attorney for Defendant | Assistant General |
| Office of the General Counsel | Counsel for Litigation |
| U.S. International Trade Commission | (202) 205-3365 |
| 500 E Street, SW | ANDREA C. CASSON |
| Washington, DC  20436 | Assistant General |
| Telephone (202) 708-1521 | Counsel for Litigation |
| Fax: (202) 205-3111 | (202) 205-3105 |

**DATED:  February 9, 2023**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ii

I.    General Comments ................................................................... 1

II.   Response to the Specific Instructions Raised in Plaintiffs' Statement and Order .................................................................. 2

III.  Conclusion ................................................................................ 9

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                       **Page(s)**

*Hitachi Metals, Ltd. v. United States*,
   949 F.3d 710 (Fed. Cir. 2020) ............................................................... 3

*Nippon Steel Corp. v. Int'l Trade Comm'n*,
   345 F.3d 1379 (Fed. Cir. 2003) ....................................................... 1, 2

*Nucor Corp. v. United States*,
   414 F.3d 1331 (Fed. Cir. 2005) ....................................................... 2, 3

*Rhone Poulenc S.A. v. United States*,
   8 C.I.T. 47, 592 F. Supp. 1318 (1984) ................................................ 2

**Statutes**

19 U.S.C. § 1677(7)(C)(ii) ........................................................................... 2

Defendant U.S. International Trade Commission hereby responds to Plaintiffs' Draft Remand Order ("Order") (ECF 55) and Accompanying Statement ("Statement") (ECF 56).

## I. General Comments

Plaintiffs' Order highlights precisely why remand is uncalled for in this case. Plaintiffs' proposal would direct the Commission to "reconsider" record evidence without indication that the Commission's original consideration of that evidence was insufficient to meet the substantial evidence test or was not otherwise in accordance with law. *See* Order ¶¶ 4–6. The proposed instructions only serve to highlight that what plaintiffs seek is for the Commission to reweigh the facts in the record to reach a negative determination.

Plaintiffs also request that the record not be reopened in the event of remand. While the Commission takes no position at this time (absent an actual remand or the opportunity to consider what would be needed to address the remand instructions), we note that the decision whether to reopen a record lies within the Commission's discretion. *Nippon Steel Corp. v. Int'l Trade Comm'n*, 345 F.3d 1379, 1382 (Fed. Cir. 2003).

## II. Response to the Specific Instructions Raised in Plaintiffs' Statement and Order

With respect to proposed instruction (1), the Commission has already discussed in its brief and at argument that it is only required to *consider* underselling under the plain language of 19 U.S.C. § 1677(7)(C)(ii). Def.Br.23–24. Plaintiffs continue to misinterpret the Federal Circuit's instruction that the Commission consider underselling and price depression or suppression separately as imposing a requirement that the Commission make a finding on the significance of underselling. Statement¶1 (*citing Nucor Corp. v. United States*, 414 F.3d 1331, 1340 (Fed. Cir. 2005)). In *Rhone Poulenc S.A. v. United States*, the Court stated that "{a}lthough the concise expression of such a finding is preferable, we are reluctant to require the ITC to state its position with technical exactitude in this developing area of the law." 592 F. Supp. 1318, 1326 (Ct. Int'l Trade 1984). Although we recognize that the law in this area is now developed, it remains that the statute does not contain a requirement to make an underselling finding. Had it contained such a requirement, the Court would have lacked authority to abstain from imposing one in *Rhone Poulenc*. This Court should decline

to elevate a misreading of *Nucor* over the plain language of the statute and relevant case law discussed at Def.Br.23–24, 34.

With respect to proposed instruction (2), the Commission properly considered non-price factors in its discussion of the conditions of competition and in the context of its injury analysis. The Commission considered availability/reliability of supply at Appx02101, Appx02117–02118; the degree of interchangeability between DLM and MHA at Appx02100, Appx02105 (n.143), Appx02118; and it discussed why the record did not support Plaintiffs' claim that subject imports merely replaced nonsubject imports from China as to maintain supplier diversification at Appx02101, Appx02117 (n.185).

Regarding proposed instruction (3), plaintiffs incorrectly claim that the Commission has a "precedent" of giving the greatest weight to quarterly price comparison data in determining price effects. First, the Commission's analysis of price effects in the current case was not bound by its analyses in previous investigations, as each investigation is *sui generis*. *See Hitachi Metals, Ltd. v. United States,* 949 F.3d 710, 718 (Fed. Cir. 2020). Second, while the cases cited by plaintiff show that the Commission often uses price comparisons to assess one subset of price

3

effects, *i.e.,* underselling, the Commission's assessment of price depression and suppression often entails consideration of other record evidence, including price trend data, market share data, and confirmed lost sales to assess price depression or suppression. This comports with the Commission's analysis in this case. The Commission may reasonably find price effects in the form of significant price depression (or suppression) when that finding is based on the evidentiary record, as here. Quarterly price comparisons do not need to show predominant underselling for the Commission's price depression finding to be supported by substantial evidence.

Plaintiffs' proposed instruction (4) is equally unavailing. The Commission already explained that the price comparison data did not undermine its finding of price depression. The domestic industry repeatedly lowered its price floor to maintain sales volume, a strategy that would prevent low-priced offers for subject imports from resulting in sales and being reflected in the quarterly pricing data. Appx02105 (n.143), Appx02108–02109. The Commission explained that, given the low overselling margins in some quarters, the average overselling in those quarters likely included specific sales of lower-priced subject

4

imports.  Appx02105 (n.143).  The Commission also discussed the differing price trend data for product [███████████████████████████████████████████████████████████].  Appx02107–02108.  The Commission observed that underselling was concentrated in product [███████████████████████████████████] percent of quarterly comparisons, further reinforcing that the overselling in the pricing data may reflect the domestic industry's efforts to reduce prices.  Appx02104; Appx01724.  As discussed extensively in the Commission's Views, the finding that low-priced subject import offers resulted in the domestic industry lowering its prices or losing sales was informed by the pertinent conditions of competition and was corroborated by hearing testimony, price trend data, confirmed lost sales, and contemporaneous documentation. Appx02104–02109.  *See* Def.Br.34–46

   The Commission considered that the domestic industry reported lost revenues, which were confirmed by two U.S. purchasers, and acknowledged that the largest number of purchasers had reported that they did not know whether domestic producers had lowered prices. Appx02109 (n.154).  The Commission also acknowledged that there were no explicit references to contractual meet-or-release provisions in

5

contemporaneous documentation submitted by Novus, but found that these communications showed instances where customers notified Novus of offers of lower prices for subject imports and either [     ] or [          ]. Appx02108.

Proposed instruction (5) echoes the misunderstanding of instruction (3) concerning the Commission's separate considerations of lost sales and quarterly price comparisons. The Commission considered quarterly price comparisons to assess underselling, just as it did in Plaintiffs' cited cases, but reasonably attached more weight to other record evidence, including lost sales, in finding that subject imports had significant price effects.

In its Views, the Commission explained its reliance on [    ] questionnaire response. Appx02106 (n.146). That is, [    ] had explicitly reported purchasing imports in lieu of the domestically produced product primarily due to price. The fact that this purchaser had [                    ] does not undermine that the domestic industry's sales to this purchaser

6

would have been higher than they otherwise were but for the availability of low-priced subject imports in these specific transactions.

In proposed instruction (6), plaintiffs again direct the Commission to "reconsider" aspects of its impact analysis already discussed in its Views. First, they claim that the growth in subject import market share could not be injurious as subject imports consistently oversold the domestic like product. Plaintiffs ignore the Commission's explanation that, notwithstanding the overselling reflected in quarterly comparisons, the record nonetheless indicated that purchasers were offered lower-priced subject imports in particular transactions and that subject imports were able to take substantial quantities of sales from the domestic industry due to their pricing. Appx02105–02106. While plaintiffs may have preferred the Commission give greater weight to the quarterly comparisons, substantial evidence—as reflected by lost sales responses and purchaser communications—supports the Commission's findings that subject imports took a substantial volume of sales from the domestic industry due to price. Appx02105–02106, Appx02116–02117. Accordingly, the domestic industry's output was lower than it

7

otherwise would have been absent the presence of low-priced subject imports.

Likewise, the Commission addressed plaintiffs' claim that the growth in subject market share could not have been injurious because the domestic industry increased its U.S. shipments, and one producer lacked [                    ].  The Commission explained that this increase was not commensurate with increases in apparent U.S. consumption.  Appx02114.  It also explained that the limited [        ] of one domestic producer did not sever the causal link between subject imports and the domestic industry's declining performance.  Appx02117–02118.  It explained that even if the domestic industry could not have increased its U.S. shipments, that would not explain the revenues lost due to the price-depressing effects of subject imports.  Appx02118.

Finally, the Commission did not assume that purchasers would turn to the domestic industry as nonsubject imports from China receded from the market.  The Commission explained that the record did not reflect a replacement of Chinese-origin methionine with subject imports; the increase in subject import volume far exceeded the

8

reduction in nonsubject import volumes. Appx02117 (n.185). As the Commission discussed, had there simply been a replacement of nonsubject import volumes with subject imports, the record would have shown a domestic industry gain in market share to match the [ ] percent increase in apparent U.S. consumption during the period of investigation. Appx02117, Appx01796. *See* Def.Br.51–56.

### III. Conclusion

For the above reasons and those presented in the Commission's brief and at oral argument, the Court should reject Plaintiffs' claims and affirm the Commission's determinations.

Respectfully submitted,

*/s/Dominic L. Bianchi*
Dominic L. Bianchi
General Counsel

*/s/ Andrea C. Casson*
Andrea C. Casson
Assistant General Counsel for
Litigation

*/s/ Noah A. Meyer*
Noah A. Meyer
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436

9

                                        Telephone: (202) 708-1521
                                        noah.meyer@usitc.gov

                                        *Attorneys for Defendant United States*
                                        *International Trade Commission*

Date:  February 9, 2023

10

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedures paragraph 2(B)(1)(c) and (2) and this Court's Order dated December 15, 2022, I hereby certify that the attached **DEFENDANT UNITED STATES INTERNATIONAL TRADE COMMISSION'S RESPONSE TO PLAINTIFFS' DRAFT REMAND ORDER AND ACCOMPANYING STATEMENT**, contains 1,500 words, according to the word-count function of the word processing system used to prepare this brief (Microsoft Word 2010).

Date: February 9, 2023         */s/ Noah A. Meyer*

Noah A. Meyer
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 708-1521
noah.meyer@usitc.gov

11